UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM PETAWAY,
    *Plaintiff*,

    v.

JACLYN OSDEN, et al.
    *Defendants*.

No. 3:17-cv-00004 (VAB)

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Sentenced to twelve and a half years in prison on August 19, 2005, Judgment, Def. Mot. for Summ. J., Ex. A, ECF No. 111-5 at 5, William Petaway ("Plaintiff") obtained his release from incarceration on July of 2016, in part, because of sentence-reducing credits.[1] Compl., ECF No. 1, at 9.

On January 3, 2017, Mr. Petaway, *pro se*, filed this lawsuit under 42 U.S.C. § 1983, alleging that his sentence should have been reduced further and that the State of Connecticut (the "State") wrongfully continued to confine him in violation of his constitutional rights. Compl. at 9–10.

Defendants now move for summary judgment. Def. Mot. for Summ. J., ECF No. 111.[2]

For the reasons discussed below, the Court now **GRANTS** Defendants' motion for summary judgment, ECF No. 111.

---

[1] *See Petaway v. Comm'r of Correction*, 160 Conn. App. 727, 734, 125 A.3d 1053, 1057 (2015) ("Indeed, it appears that the petitioner has benefitted from the enactment of §§ 54–125a and 18–98e because he has received risk reduction credits toward a reduction of his sentence, a benefit not available to him at the time he committed the robbery for which he is serving a sentence of imprisonment.").

[2] Defendants did not previously move to dismiss, so the Court is considering the merits of Mr. Petaway's legal claims for the first time.

1

I. FACTUAL AND PROCEDURAL BACKGROUND

A. Factual Allegations

On August 19, 2005, having been convicted of Robbery in the First Degree, in violation of Connecticut General Statute 53a-134(a)(4), Mr. Petaway received a prison term of 150 months. *State v. Petaway*, NNH -CR04-0028093-T (J. Gold) (Aug. 19, 2005); CONN. GEN. STAT. 53a-134(a)(4). He received credit for jail time served, resulting in a sentence scheduled to run until August of 2017. Judgment.

Three years into his sentence, Mr. Petaway was allegedly transferred to the Rhode Island Department of Corrections under the terms of the New England Interstate Corrections Compact. Compl. at 6; *see also* CONN. GEN. STAT. 18-102 ("The party states . . . declare that it is the policy of each of the party states to provide such facilities and programs on a basis of cooperation with one another, thereby serving the best interests of such offenders and of society and effecting economies in capital expenditures and operational costs.").

While incarcerated in Rhode Island, Mr. Petaway allegedly received several disciplinary infractions, known as "bookings." Compl. at 6–7. Allegedly, Rhode Island correctional officials did not give Mr. Petaway written copies of his bookings or the evidence relied upon by prison officials, or officials' reasons for finding Mr. Petaway in violation of their rules. Compl. at 7. Rhode Island correctional officials allegedly transmitted information about Mr. Petaway's bookings to correctional officials in Connecticut. Compl. at 8. Based upon those reports, Connecticut officials allegedly reduced Mr. Petaway's "good time" credits. Compl. 8–9. Mr. Petaway alleges that had his "'good time' not been taken, or had it been returned, [he] would [have] been released in May 2016[.]" Compl. at 9.

Mr. Petaway obtained his release from prison in July 2016. Compl. at 9.

B.     **Procedural Background**

On January 3, 2017, Mr. Petaway sued prison officials under 42 U.S.C. § 1983. Compl. at 9–10. On February 3, 2017, the Court granted Mr. Petaway leave to proceed *in forma pauperis*. Order Granting Mot. for Leave to Proceed *in forma pauperis*, ECF No. 7.

On July 25, 2017, Defendants answered Mr. Petaway's Complaint. Answer, ECF No. 28. On October 17, 2017, Defendants filed a corrected Answer. Corrected Answer, ECF No. 68.

On December 14, 2018, Defendants moved for summary judgment. Mot. for Summ. J., ECF No. 111. In support of this motion, Defendants submitted the following: (1) "time sheets" detailing Mr. Petaway's earned and forfeited risk reduction credits and disciplinary infractions, *id.*, Ex. B; (2) the affidavit of Correctional Counselor Supervisor Heidi Palliardi, allegedly the final Connecticut approver of two Rhode Island disciplinary reports, Affidavit of Heidi Palliardi ("Palliardi Aff."), *id.*, Ex. C at 1–9; (3) records of Mr. Petaway's disciplinary infractions and sanctions, Connecticut Department of Correction Disciplinary Records for William Petaway ("Petaway Disciplinary Records"), *id.*, Ex. C at 12–81; (4) the affidavit of Correctional Counselor Supervisor Jaclyn Osden, allegedly the final Connecticut approver of two Rhode Island disciplinary reports, Affidavit of Jaclyn Osden ("Osden Aff."), *id.*, Ex. D; (5) Rhode Island Department of Corrections disciplinary policy documents, *id.*, Ex. E; (6) Connecticut Department of Correction risk reduction earned credit policy documents, *id.*, Ex. F; (7) the affidavit of Correctional Officer Andrezej Iciak, who allegedly converted cassette tapes to MP3 files for this case at the request of the Connecticut Attorney General's office, *id.*, Ex. G, and a

letter regarding the sending of those recordings to Mr. Petaway, *id*.; and (8) documents related to the denial of Mr. Petaway's application for restoration of risk reduction earned credit, *id*., Ex. H.

On April 18, 2019, the Court held a hearing on the motion for summary judgment. Motion Hearing, Minute Entry, ECF No. 126.

## II.     STANDARD OF REVIEW

In a motion for summary judgment, the moving party must establish that no genuine issues of material fact remain in dispute and that it is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law" and a factual issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir.2013) (citations omitted).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than speculate or vaguely assert the existence of unspecified disputed material facts. *Au New Haven, LLC v. YKK Corp*., No. 1:15-cv-3411-GHW-SN, 2019 WL 1437516, at *3 (S.D.N.Y. Mar. 31, 2019)("To create a disputed fact sufficient to deny summary judgment, the non-moving party must produce evidence in the record and 'may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . .' Instead, the response 'must set forth specific facts demonstrating that there is a genuine issue for trial.'")(*quoting Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)("When a motion for summary judgment is properly supported by documents or other

4

evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'")(*quoting* FED.R.CIV.P. 56(e)).

The court reads a *pro se* party's papers liberally and interprets them to raise the strongest arguments they suggest. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). "Despite this liberal interpretation, however, an unsupported assertion cannot overcome a properly supported motion for summary judgment." *Joyce v. Hanney*, No. 3:05CV1477 (WWE), 2009 WL 563633, at *2 (D. Conn. Mar. 4, 2009) (*citing Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991)).

## III. DISCUSSION

### A. Mr. Petaway's "Good Time" Claim

Section 1983 provides a cause of action for civil deprivation of rights against any individual "who, under color of [law] subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]"

In 1974, the Supreme Court determined that an inmate might have a civil right to "good time credit." *Wolff v. McDonnell*, 418 U.S. 539, 556–57 (1974). Such a right, or liberty interest, does not arise from the United States Constitution. *Id.* ("It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior.").

Rather, an incarcerated or formerly-incarcerated person plausibly asserts a liberty interest in sentence-reduction credit when three conditions are met: (1) a state statute provides for the credit; (2) a state statute specifies the conditions for forfeiture of the credit; and (3) the credit is forfeited even though the statutorily-specified conditions are not met. *Id*. ("But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated."). As a result, courts must first examine the relevant state sentence-reduction credit statutes to determine what liberty interests, if any, they confer on inmates.

Connecticut General Statute 18-7a provides for the earning of good conduct credit. CONN. GEN. STAT. § 18-7a. For sentences after July 1, 1983, the statute provides that an inmate may:

> earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served and pro rata for a part of a month served of a sentence up to five years, and twelve days for each month served and pro rata for a part of a month served for the sixth and each subsequent year of a sentence which is more than five years. Misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such reduction by the commissioner or his designee . . . .

CONN. GEN. STAT. § 18-7a(c).

"Connecticut courts have held that [a section 18-7a] liberty interest is created only when an inmate loses previously earned good time credit; the loss of the ability to earn good time

credit in the future does not create a liberty interest." *Joyce*, 2009 WL 563633, at *6 (*citing Abed v. Armstrong*, 43 Conn.App. 176, 181–82, 682 A.2d 558 (1996)).

Connecticut General Statute 18-98e provides for risk reduction credit. CONN. GEN. STAT. § 18-98e. For sentences after October 1, 1994, the statute provides that an inmate may:

> earn risk reduction credit for adherence to the inmate's offender accountability plan, for participation in eligible programs and activities, and for good conduct and obedience to institutional rules as designated by the commissioner, provided (1) good conduct and obedience to institutional rules alone shall not entitle an inmate to such credit, and (2) the commissioner or the commissioner's designee may, in his or her discretion, cause the loss of all or any portion of such earned risk reduction credit for any act of misconduct or insubordination or refusal to conform to recommended programs or activities or institutional rules occurring at any time during the service of the sentence or for other good cause. If an inmate has not earned sufficient risk reduction credit at the time the commissioner or the commissioner's designee orders the loss of all or a portion of earned credit, such loss shall be deducted from any credit earned by such inmate in the future.

CONN. GEN. STAT. § 18-98e(b).

Unlike the good conduct statute, Connecticut courts have determined that the risk reduction statute is discretionary in nature and confers no liberty interest in earned or future risk reduction credit. *See Green v. Comm'r of Correction*, 184 Conn. App. 76, 86–87, 194 A.3d 857, 864 (2018) ("The fact that the commissioner is vested with such broad discretion in implementing the RREC program is significant. Our appellate courts have concluded, consistently, that an inmate does not have a constitutionally protected liberty interest in certain benefits—such as good time credits, risk reduction credits, and early parole consideration—if the statutory scheme pursuant to which the commissioner is authorized to award those benefits is discretionary in nature."); *see also Perez v. Comm'r of Correction*, 326 Conn. 357, 372, 163 A.3d 597, 608 (2017) ("Although the legislature has provided guidance to the respondent as to how to exercise his discretion, the respondent still has broad discretion to award or revoke risk

7

reduction credit. As such, the statute does not support an expectation that an inmate will automatically earn risk reduction credit or will necessarily retain such credit once it has been awarded.").

Mr. Petaway alleges that Connecticut prison officials, relying on the procedurally deficient disciplinary findings of Rhode Island prison officials, deprived him of his right to "good time" credits that would have reduced his sentence. Compl. at 3–4; Pl. Brief in Supp. of Summ. J. Mot., ECF No. 49 ("Statement of the case: This is a 42 U.S.C. § 1983 action, filed by an ex-prisoner, seeking damages for 'loss of liberty', and injunctive relief, based on the denial of 'due process' as required in *Wolff*."); 42 U.S.C. § 1983.

Connecticut Department of Correction time keeping records and correctional officials' affidavits, however, show that Mr. Petaway did not lose good conduct, or "good time" credit and there is no factual dispute on this issue. Palliardi Aff. ¶¶ 12–13; Osden Aff. ¶¶ 13–14; Petaway Disciplinary Records at 12, 16, 20,and 24. Rather, he forfeited earned risk reduction credit and was unable to earn risk reduction credit during certain months.

On May 13, 2013, the Rhode Island Department of Corrections sent a negative disciplinary report to the Connecticut Department of Correction. Palliardi Aff. ¶ 12. As a result, Mr. Petaway forfeited five days of earned risk reduction credit and was unable to earn five days' future risk reduction credit, for a net loss of ten days of risk reduction credit. *Id.*, Petaway Disciplinary Records, ECF No. 111-6, at 24.[3]

---

[3] The Court notes that Ms. Palliardi's affidavit appears to misstate that Mr. Petaway's May 13, 2013 disciplinary infraction resulted in an inability to earn risk reduction credit for June 2013; the Interstate Compact Office Disciplinary Report Review Form that she signed and referred to in her affidavit states that Mr. Petaway was unable to earn these credits in May 2013. Palliardi Aff. ¶ 12; Petaway Disciplinary Records, ECF No. 111-6, at 24. Ms. Palliardi makes the same mistake for the June 21, 2013 infraction. Palliardi Aff. ¶ 13; Petaway Disciplinary

On June 21, 2013, Rhode Island officials sent another negative disciplinary report to Connecticut officials. As a result, Mr. Petaway lost ten days of risk reduction credit and could not earn five days of future credit, resulting in a net loss of fifteen days of risk reduction credit. Palliardi Aff. ¶ 13, Petaway Disciplinary Records at 20.

On November 29, 2013, Rhode Island officials issued another negative disciplinary report on Mr. Petaway. Osden Aff. ¶ 13. For that infraction, Mr. Petaway lost ten days of earned risk reduction credit and could not earn five days of credit, for a net loss of fifteen days of credit. *Id.*, Petaway Disciplinary Records at 16.

On January 31, 2014, Connecticut officials received another negative disciplinary report on Mr. Petaway. As a result, he lost five days of earned risk reduction credit and could not earn five days of future credit, for a net loss of ten days of risk reduction credit. Osden Aff. ¶ 14; Petaway Disciplinary Records at 12.

In summary, as sanction for the Rhode Island infractions now challenged by Mr. Petaway, Compl. 3–4, Connecticut officials forfeited a portion of Mr. Petaway's earned risk reduction credits and prevented him from accruing risk reduction credits in four months. Palliardi Aff. ¶¶ 12–13; Osden Aff. ¶¶ 13–14; Petaway Disciplinary Records at 12, 16, 20, and 24. These forfeitures seemingly account for the delay in Mr. Petaway's release from May to July of 2016.

---

Records, ECF No. 111-6, at 20. These mistakes are immaterial as a matter of law because the Commissioner for the Connecticut Department of Correction has broad statutory discretion to rescind risk reduction credits. *Green v. Comm'r of Correction*, 184 Conn. App. 76, 86–87, 194 A.3d 857, 864 (2018) ("The fact that the commissioner is vested with such broad discretion in implementing the RREC program is significant. Our appellate courts have concluded, consistently, that an inmate does not have a constitutionally protected liberty interest in certain benefits—such as good time credits, risk reduction credits, and early parole consideration—if the statutory scheme pursuant to which the commissioner is authorized to award those benefits is discretionary in nature.").

*See* Compl. at 9.[4] At oral argument, Mr. Petaway conceded that this case only involves risk reduction credits. As a result, the only issue is whether Mr. Petaway has been unlawfully deprived of these credits. The answer is no.

Even assuming Mr. Petaway can satisfy the first two conditions under *Wolff* noted above, that a state statute provides for the credit and specifies the conditions for forfeiture of the credit, *see Wolff*, 418 U.S. at 556–57, his claim nevertheless fails on the third: that credit has been forfeited, even though the statutorily-specified conditions were not met. *Id.* at 556–57 (describing a liberty interest when a state rescinds "good time" credit for a minor infraction even though the state, through its statutes, "itself recogniz[ed] that its deprivation is a sanction authorized for major misconduct[.]").

Connecticut's "risk reduction credit" is discretionary and the implementing statute gives the Commissioner of the Department of Corrections or the Commissioner's designee the authority to rescind existing credits or prevent inmates from earning risk reduction credits for disciplinary and non-disciplinary infractions, including misconduct, insubordination, refusal to participate in programs or activities, "or for other good cause." CONN. GEN. STAT. § 18-98e(b).

As a result, under section 18-98e's broad grant of authority to the Commissioner, there is no right or liberty interest, at least with respect to risk reduction credits. *See Green*, 184 Conn. App. at 86–87 ("Our appellate courts have concluded, consistently, that an inmate does not have a constitutionally protected liberty interest in certain benefits—such as good time credits, risk

---

[4] Even if these fifty credits were not the reason for the delay or are insufficient to account for the total delay claimed by Mr. Petaway, his challenge rests on the credits allegedly lost as a result of his Rhode Island bookings.

reduction credits, and early parole consideration—if the statutory scheme pursuant to which the commissioner is authorized to award those benefits is discretionary in nature.").[5]

Mr. Petaway argues that risk reduction credits, like more traditional good time credits, cannot be forfeited and relies on a footnote in the Connecticut Supreme Court's decision in *Perez* to support his position. The Court disagrees.

The Connecticut Supreme Court only properly limited the scope of its ruling in *Perez* to the facts of the case before it. Thus, because the petitioner did not "claim[ ] that he has been deprived of his earned risk reduction credit, but merely that the credit he has earned is no longer being applied to advance his parole eligibility date," *Perez*, 326 Conn. at 369 n.5, the Connecticut Supreme Court did "not decide whether a deprivation of his actual earned risk reduction credit would violate due process." *Id.* (citing *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000)). The court's citation to the Second Circuit's ruling in *Abed*, however, is telling because it reinforced the notion that credits earned under a discretionary scheme do not create a liberty interest. *Id.*

In short, the Connecticut Supreme Court's ruling in *Perez* does not support the notion that earned risk reduction credits under Connecticut law create a liberty interest. Indeed, the

---

[5] Further, Mr. Petaway concedes that he did not grieve his Rhode Island disciplinary tickets while in Rhode Island. Motion Hearing, Minute Entry, ECF No. 126; *see also* Def. Mem. of Law in Supp. of Mot. for Summ. J. at 26 ("At no time did [Mr.] Petaway challenge R.I. DOC regarding its compliance with *Wolff*. [Mr.] Petaway had the opportunity to challenge all reports."). Mr. Petaway's failure to challenge his Rhode Island tickets deprived Connecticut Department of Correction officials of timely notice or an administrative record on which to evaluate his due process claims. Absent this record, state officials had "good cause" to rescind Mr. Petaway's earned risk reduction credits. CONN. GEN. STAT. § 18-98e(b) ("[T]he commissioner or the commissioner's designee may, in his or her discretion, cause the loss of all or any portion of such earned risk reduction credit . . . for other good cause."). Further, state officials are likely entitled to qualified immunity for their reliance on the ungrieved Rhode Island disciplinary reports. *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012)("Qualified immunity thus affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions, and 'protects all but the plainly incompetent or those who knowingly violate the law' from liability for damages.")(quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)).

decision's language supports the opposite conclusion: that "the statute does not support an expectation that an inmate will automatically earn risk reduction credit or will necessarily retain such credit once it has been awarded." *Id.* at 372.

In any event, even if the Connecticut Supreme Court's decision had changed the legal landscape with respect to the forfeiting of earned risk reduction credits in 2017, which, as discussed above, it did not, the Defendants would be entitled to qualified immunity, given the state of the law with respect to earned risk reduction credits and their discretionary nature in 2013 and 2014, when Mr. Petaway lost them, or in 2016, when he could have benefitted from not having forfeited them. *See White v. Pauly*, 137 S. Ct. 548, 551–52 (2017) ("Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'")(*quoting Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

Accordingly, Defendants are entitled to judgment as a matter of law because Mr. Petaway has not been deprived of a legally cognizable entitlement or right. *See* 42 U.S.C. § 1983.[6]

### B. Remaining Claims

Because Mr. Petaway has no viable legal claim, his pre-trial motions for Order, Reconsideration of [104] Motion for Order, for the Court not to consider the alleged Rhode

---

[6] Similarly, Defendants were not deliberately indifferent to Mr. Petaway's rights under *Wolff* because he does not have right or liberty interest in risk reduction credit, and because he has failed to sufficiently plead an Eighth Amendment violation. *See, generally*, *Waring v. Meachum*, 175 F. Supp. 2d 230, 238 (D. Conn. 2001)("To establish a violation of the Eighth Amendment . . . an inmate must allege a sufficiently serious deprivation under an objective standard and that prison officials . . . acted with deliberate indifference . . . . resulting in the denial of the minimal civilized measure of life's necessities. In addition, the prison officials must have acted with deliberate indifference in that they knew of and disregard[ed] an excessive risk to inmate health or safety.") (*alterations in original*, *quoting Wilson v. Seiter*, 501 U.S. 294, 297–98, 298, 304 (1991); *Branham v. Meachum,* 77 F.3d 626, 631 (2d Cir.1996)).

Island Department of Corrections recordings, and Order, ECF Nos. 105, 110, 113, and 120, must be denied as moot as well as his various claims for relief.

In any event, the Court cannot order the Connecticut Department of Correction to "erase" Mr. Petaway's Rhode Island bookings, Compl. at 5 (requesting an injunction for records destruction). These records are not court records and the Court lacks authority under Connecticut law to order their destruction. *See Doe v. Manson*, 183 Conn. 183, 184, 438 A.2d 859, 860 (1981) (recognizing that certain records are not court records and therefore, "the trial court erred in ordering their destruction.").

To the extent that Mr. Petaway's claim reflects a broader stake in the outcome of this litigation, the Court lacks subject matter jurisdiction as a result of Mr. Petaway's release from prison. *See, e.g., Khalil v. Laird*, 353 F. App'x 620, 621 (2d Cir. 2009)(summ. order)("Khalil was released from prison while this action was pending in the District Court. The District Court determined that, because Khalil was no longer housed in the MDC, Khalil's claims were moot and the Court lacked subject matter jurisdiction. We agree. When Khalil was released from prison, he no longer had a continuing personal stake in the outcome of this action, and his claims were rendered moot.")(internal quotation and citation omitted)).

Finally, because Mr. Petaway has no viable legal claims, the Court need not reach the merits of Defendants' claims regarding the constitutional sufficiency of Connecticut Department of Correction or Rhode Island Department of Corrections disciplinary hearings, Def. Mem. of Law in Supp. of Mot. for Summ. J., ECF No. 111-1, at 23–27, or Defendants' qualified immunity, *id*. at 27–32.[7]

---

[7] Similarly, the Court need not address Mr. Petaway's chain of custody arguments, ECF No. 113, because the Court did not consider Defendants' recordings of Mr. Petaway's Rhode Island disciplinary hearings.

**IV.    CONCLUSION**

For the reasons discussed above, the Court now **GRANTS** Defendants' motion for summary judgment, ECF No. 111.

The Clerk of the Court is respectively requested to close the file.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of April, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE
